```
 1                  UNITED STATES DISTRICT COURT

 2        CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION

 3           HONORABLE DAVID O. CARTER, U.S. DISTRICT JUDGE

 4

 5

 6
     UNITED STATES OF AMERICA,          )
 7                                      )
                     PLAINTIFF,         )
 8                                      )   CASE NO.
          vs.                           )   SA CR 15-0060-DOC
 9                                      )
     (2) MUHANAD ELFATIH M.A. BADAWI,   )
10                                      )
                     DEFENDANT.         )
11   _____)

12

13

14              REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  WEDNESDAY, JANUARY 20, 2016

16                          12:04 P.M.

17                    LOS ANGELES, CALIFORNIA

18

19

20

21

22   _____

23         SANDRA MacNEIL, CSR 9013, RPR, CRR, RMR
           Official Reporter, U.S. District Court
24                  255 East Temple Street
                Los Angeles, California  90012
25          213.894.5949; macneilsandy@gmail.com
```

```
 1                    APPEARANCES OF COUNSEL:

 2


 3   FOR PLAINTIFF, UNITED STATES OF AMERICA:

 4        OFFICE OF THE UNITED STATES ATTORNEY
          BY:  MELISSA J. MILLS, ASSISTANT U.S. ATTORNEY
 5        312 NORTH SPRING STREET
          LOS ANGELES, CALIFORNIA  90012
 6        213.894.2434


 7
     FOR DEFENDANT, MUHANAD ELFATIH M.A. BADAWI:
 8
          CORRIGAN WELBOURN AND STOKKE, APLC
 9        BY:  KATHERINE T. CORRIGAN, ATTORNEY AT LAW
          4100 NEWPORT PLACE, SUITE 550
10        NEWPORT BEACH, CALIFORNIA  92660
          949.251.0330
11

12   ALSO PRESENT:

13        DAVID SHINN, WARDEN, MDC LOS ANGELES

14        COMMANDER MICHAEL FORBES, ACTING HEALTH SERVICES
          ADMINISTRATOR, MDC
15
          LISA HOPE, CHIEF PSYCHOLOGIST, MDC
16
          JAMES PELTON, REGIONAL MEDICAL DIRECTOR, MDC
17

18

19

20

21

22

23

24

25
```

```
 1              LOS ANGELES, CALIFORNIA; WEDNESDAY, JANUARY 20, 2016
 2                                 12:04 P.M.
 3                                   -oOo-
 4              THE COURT:  We're on the record in Mr. Badawi's
 5    matter, and counsel, if you'd be so kind as to state your
 6    appearances.
 7              MS. MILLS:  Good afternoon, Your Honor.  Melissa Mills
 8    on behalf of United States.
 9              THE COURT:  Thank you.
10              MS. CORRIGAN:  Good afternoon.  Kate Corrigan on
11    behalf of Mr. Badawi.  He's present in custody.  Also, for the
12    record, I want to note that four of his family members are all
13    here, his mom, brother, and then two cousins.
14              THE COURT:  Thank you very much.
15         Please be seated, and let me get as much information as
16    quickly as possible today.  So would you like to proceed with
17    the warden, the staff?
18         The warden, I invite you to come forward.
19         I know who all of you are, but for the record, would you
20    just restate your names.
21              MR. SHINN:  Yes, Your Honor.  Good morning.  My name
22    is David Shinn.  I'm the warden at MDC Los Angeles.  With me I
23    have Dr. Lisa Hope.  She's our chief psychologist.
24              THE COURT:  Right.
25              MR. SHINN:  Dr. Jim Pelton is our regional medical
```

1  director, and --
2          THE COURT:  It's a pleasure to meet you.  Thus far,
3  I've met you by phone, and I very much appreciate meeting you
4  today.  Pleasure.
5          MR. SHINN:  And lastly is Commander Michael Forbes.
6  He's our acting health service administrator.
7          THE COURT:  Excellent.
8      Warden, your thoughts, input?
9          MR. SHINN:  Yes, sir.
10     We have, as I mentioned last time, increased the structure
11 of our programs with Mr. Badawi in terms of feeding.  We have
12 also been far more direct in our communication with Mr. Badawi
13 to eat voluntarily.  As a result of that, Mr. Badawi has gained
14 weight over the last 15 days.  He has reached a high of 128
15 pounds throughout this period of time.  Today his weight is at
16 126 pounds.
17         THE COURT:  Okay.
18         MR. SHINN:  And we have not had to involuntarily feed
19 Mr. Badawi throughout this period of time.
20         THE COURT:  Oh, you have not had to?
21         MR. SHINN:  No, sir.
22         THE COURT:  This is a very speculative question, but
23 the one thing that I think has worked has been the threat, in a
24 sense, of feeding Mr. Badawi, and I'm guessing, quite frankly,
25 that that may have then led to voluntary eating, which is the

1  Court's hope.  I mean, the last thing I'd want is involuntary
2  feeding.  It's uncomfortable.  It's a last resort.  And if
3  that's the case, then I'm wondering if that is taken away by
4  any movement to Santa Ana before the trial, if I'm putting
5  myself back in that position of noncompliance, and if I bring
6  him back up to L.A.
7       The next thing I'm wondering is why I'm just not moving
8  the case here.  In other words, if I get in the middle of a
9  trial and I have any involuntariness on his part, unwillingness
10 to eat, I now have got a jury, I've got the public, I've gotta
11 bring him down the highway, I've gotta bring him back.
12      So I think, minimally, without making a decision now, I'm
13 going to talk to Ms. Corrigan on February 2nd, give her more
14 time to talk to her client.  But eventually, Ms. Corrigan, I'm
15 going to want to have a conversation, may be in camera, with
16 you and your client, and a direct conversation with Mr. Badawi,
17 in terms of what his thoughts and willingness is, and a
18 demonstration of that willingness, before I would consider
19 moving him back to Santa Ana.  So it's too early.  It's
20 premature right now.
21      Number two, I tell you, I don't have a magic number.  I'm
22 not a doctor, so Dr. Hope and Dr. Pelton, I really rely upon
23 you, but I don't like the specter of him coming in at 140 and
24 anything less than he's a 140.  It's kind of a magic weight
25 number to me where all that weight is regained.  And I think

1  you've done a fabulous job.  And to get to 128 and now 126
2  today is, Mr. Badawi, thank you.  And for the family, if you've
3  had influence, I want to thank you.  We want the young man
4  healthy.
5       So Dr. Hope -- and remember everything I've just said is a
6  wild speculative guess, but I don't want to take away the
7  levers now, and I don't want to get involved in a box where I
8  start a trial in Santa Ana and I've got involuntariness and I'm
9  giving counsel on both sides as much time as they need, and now
10 I'm running him back up and down the highway and I've got a
11 jury in Santa Ana.  So I may just bring the case here.
12          MS. HOPE:  I understand, Your Honor.
13      Really the reason that Mr. Badawi is gaining weight is
14 because of the extreme structured environment we've created.
15 And the specter of the potential of having involuntary feeding,
16 I think that is a big piece; I think you're accurate.  Also,
17 just the structure we have had to place and the really direct
18 warrant for him to eat is the only reason --
19          THE COURT:  I've got a tremendous amount of confidence
20 in you, Doctor.  I met you in another proceeding I think that
21 you were testifying in, and was struck with how candid and
22 forthright you were.  If I have the in camera discussion with
23 Mr. Badawi and counsel, I would appreciate a waiver on his part
24 and having you present.
25          MS. HOPE:  Yes, Your Honor.

|     |                                                                          |
| --- | ------------------------------------------------------------------------ |
| 1   | THE COURT: As a psychologist, I think I'm really                         |
| 2   | looking to your wisdom, also, as well as the medical doctor's.           |
| 3   | Dr. Pelton. And once again, what a pleasure to meet you,                 |
| 4   | sir.                                                                     |
| 5   | MR. PELTON: Thank you, Your Honor. You, too.                             |
| 6   | I don't have too much extra to add other than I think                    |
| 7   | previously we had discussed a target weight around 130 pounds,           |
| 8   | with the notion being that if he started losing weight again,            |
| 9   | that that would give us a buffer to reengage.                            |
| 10  | THE COURT: Yeah. 140, once again, is the magic                           |
| 11  | number. I just don't like the idea that the young man comes              |
| 12  | into the system and, through his own actions, but now just               |
| 13  | dissipation, at some point maybe not being able to help himself          |
| 14  | as he got to 105, that there's a specter that he's lost weight,          |
| 15  | that he's unhealthy. So I don't know that 126 isn't as good as           |
| 16  | 140, quite frankly. There's just something in my mind says I'd           |
| 17  | like him back in the original condition, and if it takes some            |
| 18  | time, we have to get him there, okay?                                    |
| 19  | Commander.                                                               |
| 20  | MR. FORBES: Sir.                                                         |
| 21  | THE COURT: How are you?                                                  |
| 22  | MR. FORBES: Doing well, sir.                                             |
| 23  | THE COURT: You don't have to make any comments today,                    |
| 24  | but if you choose to, you're more than welcome to.                       |
| 25  | MR. FORBES: They've said just about everything, sir.                     |

1           THE COURT:  Okay.

2       Let me turn to Ms. Corrigan.  Always your thoughts are

3   appreciated.  I don't intend to engage your client today in a

4   conversation or ex parte.  It's too soon.  I am bringing you to

5   Santa Ana, Mr. Badawi and counsel, on February 2nd, but I'm

6   really toying with the matter of just setting the trial here in

7   Los Angeles on the date rather than Orange County.  I think it

8   resolves two concerns, unless I have an absolute guarantee that

9   this conduct won't take place again, and you know that I don't

10  want to get caught.  Also, the notoriety that I saw from the

11  involuntary feeding that came in the press, was I think the

12  Orange County Register, if I'm not -- or the Orange County

13  Weekly.  Some article was brought to me by a staff member.

14          MS. CORRIGAN:  It may have been the -- I know Sean

15  Emery from the Register -- I don't know if he's here, but he's

16  been attending some of the hearings.

17          THE COURT:  Hopefully --

18      Mr. Emery, are you here?

19      Well, he's always welcome.

20      I think that's easily forgotten in Orange County.  I think

21  he can get a fair trial as long as there's some time period

22  between the activity and the trial.  But I also worry about

23  regurgitation of that involuntary feeding coming up in an

24  article as we approach trial in the Register or Orange County

25  Weekly, and that may be big news down there, but it's somewhat

1  lost in Los Angeles, I think.
2      What would be your feelings about the Court moving the
3  trial here?  It's certainly an inconvenience to me, and I
4  prefer not to, but it also gives me the guarantee, if there's
5  any involuntariness on his part, I can resolve that at the
6  facility.
7          MS. CORRIGAN:  Your Honor, I personally wouldn't have
8  any -- I'll go where the Court --
9          THE COURT:  Why don't you wait till February 2nd.  Why
10 don't you wait till the 2nd.  Talk to the family and talk to
11 your client, and if they want to remain in Orange County, we
12 may do that, okay, just for convenience sake, for the family
13 coming to court, et cetera, and I want to take that into
14 account.  So let's delay that conversation till the 2nd.
15         MS. CORRIGAN:  I do have some other observations, if
16 the Court would like to hear them.
17         THE COURT:  Please.
18         MS. CORRIGAN:  I have met with my client last week and
19 then again today, and I spoke with Dr. Hope.  I've also
20 spoken -- or spoke with Dr. Hope again today, and then spoke
21 with his family members today, and I agree that the weight
22 seems to be coming up; however, his lack of communication
23 remains a constant.  And I'm noticing that Dr. Hope is nodding
24 in the affirmative.  And that is actually, at this juncture, of
25 greater concern.  Not that the weight isn't a concern.  He is,

1 you know, up to -- I think Warden Shinn said 128. I have a
2 larger concern right now, I think the -- about the -- his
3 mental state, and I think it's -- that's my number-one concern,
4 and it's something that I need to further explore.
5     THE COURT: The warden conveyed to me in one of the
6 Saturday or Sunday phone calls, I forget what date, that as
7 Mr. Badawi was gaining more strength, that -- and the word
8 wasn't "belligerent," but it was synonymous with it, that he
9 was more inclined not to be cooperative. "Pushback" isn't the
10 right word, either. I forget the word that was used, but the
11 point is, as he gained more lucidity as the strength came back,
12 the personality was changing into one of not complying, and I
13 think that that's when they were noticing the hiding of the
14 food, those kinds of activities.
15     The inability to communicate and to aid in your own -- in
16 his own defense is one standard. The unwillingness to do so is
17 a different.
18     MS. CORRIGAN: Understood.
19     THE COURT: Let's give that a little bit of time, but
20 if you see that, you bring that to the Court's attention
21 immediately.
22     MS. CORRIGAN: I will, Your Honor, and it's something
23 that I'm contemplating potentially filing with the Court.
24     THE COURT: Okay. And we'll certainly have a hearing
25 on that, and I can schedule that at any time.

```
 1              MS. CORRIGAN:  Thank you.
 2              THE COURT:  So for the government, also, I'm still
 3   toying with the idea of coming -- I'm still toying with the
 4   idea of coming to L.A.  Certainly for your benefit, I think
 5   you're stationed in L.A., your co-counsel's stationed in L.A.
 6   It may be more convenient for the witnesses.  I don't know.
 7   It's up in the air.  Let's see how we do on February 2nd, okay?
 8              MS. MILLS:  Understood, Your Honor.  The government
 9   will be there, wherever it is.
10              THE COURT:  Okay.  And I appreciate that.  Obviously,
11   once again, if I can get it to Orange County with a guarantee
12   that this doesn't occur during trial, and have a comfort level,
13   then I want to do that for the family.  It's just a lot less
14   drive coming up every day.  If I can't, though, if I have any
15   concern, then I'm going to keep him in L.A., and I think that's
16   something we can decide in the next couple months.  We don't
17   have to worry right now.
18          Well, if that's the case, it seems to me that the next
19   date that I should see you would be February 2nd.  It's a date
20   concerning discovery.
21          Ms. Corrigan, at that time you'll have more input for the
22   Court about how you're able to communicate or not with your
23   client as the discovery comes in.  How are you doing with
24   discovery?
25              MS. CORRIGAN:  We're doing fine.  In fact, we have
```

1  Mr. -- the co-defendant's new lawyer has been responding some
2  chain e-mails we have with the government, and we have set a
3  time to meet informally prior to the status conference.
4          THE COURT:  Okay.
5          MS. CORRIGAN:  So all four lawyers will be there, two
6  lawyers from the government, myself and co-coun- -- or the
7  co-defendant's counsel.
8          THE COURT:  Okay.
9          MS. CORRIGAN:  I don't know what the status is of
10 discovery for the co-defendant's counsel, because he hasn't
11 given us -- at least he hasn't given me any details, but I
12 would assume the federal defenders have turned over their
13 files.
14         THE COURT:  Okay.  I'll wait till the 2nd, because
15 I'll have both clients together.  I'll have both counsel.
16      Is there anything further today?
17      On behalf of the government, any input?
18         MS. MILLS:  No, Your Honor.  Thank you.
19         THE COURT:  Ms. Corrigan?
20         MS. CORRIGAN:  No, Your Honor.  Thank you.
21         THE COURT:  Okay.  Dr. Pelton?  Dr. Hope?  Warden?
22 Commander?
23         *(There was a collective response in the negative.)*
24         THE COURT:  Then there's no reason to remain in
25 session.  I want to thank you all for your courtesy.  We're in

```
 1  recess.  I'll see you all February 2nd in Santa Ana.
 2
 3              (Proceedings concluded at 12:17 p.m.)
 4
 5                            --o0o-
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

*CERTIFICATE*

*I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.*

*Date:  JANUARY 29, 2017*

*/S/ SANDRA MACNEIL*

*Sandra MacNeil, CSR No. 9013*